UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUDEL MENA P., <br><br> Petitioner, <br><br> v. <br><br> WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY, <br><br> Respondent. | No. 1:26-cv-04606-TLN-JDP <br><br> (A# 098-111-493) <br><br> **RELEASE ORDER** |

This matter is before the Court on Petitioner Raudel Mena P.[1]'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.)  Respondent filed an opposition. (ECF No. 5.)  For the reasons set forth below, Petitioner's habeas petition is GRANTED.

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner entered the United States on or around July 25, 2004, and was placed in expedited removal proceedings after stating that he was seeking asylum.  (ECF No. 5-1 at 6.)  On August 23, 2005, the immigration court ordered him removed to his native country in absentia after he failed to appear for a hearing.  (ECF No. 5 at 2.)  Shortly thereafter, he was released and placed on an Order of Supervision ("OSUP").  (*Id.*)

Twenty-one years later, on January 5, 2026, U.S. Immigration and Customs Enforcement ("ICE") took him back into custody to enforce the order of removal.  (*Id.* at 3.)  In the interim, he was convicted of a number of crimes under Florida law: third-degree felony tampering with evidence, first degree misdemeanor possession of marijuana, third-degree felony witness tampering, third-degree felony battery on an officer, and first-degree misdemeanor trespassing.  (*Id.* at 2–3.)  The latest of these convictions, the misdemeanor possession charge, resulted in a sentence of 22 days' confinement beginning on February 25, 2011.  (*Id.*)

While in custody, ICE served Petitioner with a notice of third country removal, stating their intent to remove him to Mexico.  (ECF No. 5-1 at 44.)  ICE attempted to remove him to Mexico twice, but Respondent alleges Petitioner refused.  (ECF No. 5 at 3.)  Petitioner is currently detained at Central Valley Annex Detention Facility.  (*Id.*)

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 18, 2026 challenging the lawfulness of his detention.  (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[2]    These facts are taken from Respondent's opposition to the habeas petition, or are not disputed by him.

Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner challenges his continued detention as violating the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause because his removal is not significantly likely in the reasonably foreseeable future.[3]  (*See* ECF No. 1 at 9.)  In opposition, Respondent contends Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(6) and that his detention is not unreasonably prolonged under *Zadvydas*.[4]  (*See* ECF No. 5.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

A.  Detention Authority

Respondent argues that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) which allows the government to continue to detain a noncitizen beyond the "removal period" under certain circumstances.  Section 1231 defines the "removal period" within which the "Attorney

---

[3]    Finding relief warranted under Petitioner's procedural due process claim, the Court declines to address Petitioner's other claims in favor of judicial economy.

[4]    Respondent also argues that the revocation of Petitioner's release was authorized under 8 C.F.R. § 241.4(l).  (ECF No. 5 at 5.)  For the reasons discussed below, the Court finds that, even assuming the initial revocation of Petitioner's OSUP was lawful, his continued detention is not.

3

General shall detain [a noncitizen]" as a 90-day period beginning on the latest of:

> **(i)** The date the order of removal becomes administratively final.
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
> **(iii)** If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Petitioner has not appealed his removal order or sought judicial review, although he continues to contest his removal to a third country. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 833 (9th Cir. 2017) ("Like Zadvydas, [Petitioner] is subject to an order of removal that is, by all appearances, administratively final. Like Zadvydas, the only obstacles to [Petitioner]'s removal from the United States are potential individualized determinations that he cannot be removed to specific countries.") Thus, Petitioner's order of removal had long since become administratively final before his re-detention on January 5, 2026. *See* 8 C.F.R. § 1241.1(e) (noting an order of removal is final on the date it was issued when it was issued in the noncitizen's absence). As discussed above, Petitioner's latest detention in criminal custody ended in 2011, which constitutes the date under 8 U.S.C. § 1231(a)(1)(B)(iii) that he was released from non-immigration custody, the latest of the three dates described in 8 U.S.C. § 1231(a)(1)(B)(i)–(iii) and thus the beginning of the removal period.

In short, the § 1231 removal period ended long before Petitioner's re-detention on January 5, 2026. "As soon as [the removal period lapsed], Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement." *Berhe v. Mattos*, No. 2:25-CV-01782-RFB-DJA, 2026 WL 222302, at *5 (D. Nev. Jan. 28, 2026) at *4. In the post-removal period, under 8 U.S.C. § 1231(a)(6), "DHS may continue to detain a non-citizen who is: (i) inadmissible; (ii) removable under certain provisions of § 1227(a); (iii) a risk to the community; or (iv) unlikely to comply with their removal order." *Id.* at *3. But such authority is limited by the demands of due process and "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Thus, to determine whether Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6), the Court must assess whether Petitioner's removal is reasonably foreseeable under *Zadvydas*.

B.  Whether Removal is Reasonably Foreseeable

In *Zadvydas*, the United States Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order has been issued.  *Id.* at 701.  Additionally, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*

However, as with all presumptions, the *Zadvydas* presumption of reasonableness is rebuttable.  "*Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal."  *Clark v. Martinez*, 543 U.S. 371, 384 (2005) (citing *Zadvydas*, 533 U.S. at 697-99) (emphasis in original); *see also Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas.").  If the presumptive period concludes or the presumption is rebutted, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing."  *Id.*

Petitioner argues that removal to his native country is not significantly likely in the reasonably foreseeable future because Respondent has not obtained travel documents, confirmation of acceptance from his native country, or other indicia of that likelihood.  (ECF No. 1 at 9.)  Respondent replies that (1) Petitioner is within the presumptively reasonable period of detention under *Zadvydas* because he has been detained for less than six months, and (2) he refused to comply with their efforts to remove him to Mexico.  (ECF No. 5 at 4–5.)

The Court finds that, even assuming Respondent is entitled to the benefit of the *Zadvydas* presumption of reasonability, that presumption has been rebutted and Petitioner has provided

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal was issued over twenty years ago, and his present detention has lasted more than five months. In all that time, ICE has failed to effectuate his removal. *See Berhe*, 2026 WL 222302, at *5.

Indeed, Respondent does not even attempt to argue that Petitioner is reasonably likely to be removed to his native country. Instead, Respondent relies on a declaration from Deportation Officer Carlos Campos stating that ICE twice attempted to remove Petitioner to Mexico and he failed to comply. (ECF No. 5-1 at 4.) The only evidence cited for this contention is Exhibit 10 to the declaration, which is an ICE Form I-229(a) document warning Petitioner of the consequences for failing to assist with removal. (*Id.* at 46–47.) This document does not state, much less prove, that Petitioner refused to comply with removal, merely that he refused to sign the document. (*Id.*)

Separately, Officer Campos declares that Petitioner would not depart his pod, but cites to no evidence of this claim other than his own statements. (*Id.* at 1–4.) Even were the Court to credit the bare assertions in the declaration, there is a far more glaring and fundamental omission from that document. The record is devoid of evidence that Mexico is even willing to accept Petitioner should he be removed there, or that the government has sufficient travel documents to effect his removal. *See, e.g.*, *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1110 (W.D. Wash. 2025) ("There is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondent's burden met where Respondent has offered little more than generalizations regarding the likelihood that removal will occur."); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Van Nguyen v. Bondi*, 818 F. Supp. 3d 1235, 1240 (W.D. Wash. 2026).

For these reasons, the Court finds that there is not a significant likelihood of Petitioner's removal in the reasonably foreseeable future and thus his continued detention violates the requirements of due process as promulgated by the Supreme Court in *Zadvydas*.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)

1.    Respondent must IMMEDIATELY RELEASE Petitioner Raudel Mena P. (A# 098-111-493) from custody on an order of supervision.  At the time of release, Respondent must return all of Petitioner's documents and possessions.  **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner unless circumstances materially change or until they can execute Petitioner's order of removal.  Respondent must follow all procedures set forth in 8 C.F.R. §§ 241.4(l) and 241.13(i), and any other applicable statutory and regulatory procedures to revoke an order of supervision.

3.    Respondent is further ENJOINED and RESTRAINED from removing Petitioner to Mexico until he first notifies Petitioner of his right to apply for asylum and withholding of deportation to Mexico in compliance with due process. *See Andriasian v. Immigr. & Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999).

4.    **The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

5.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 25, 2026

_____
Troy L. Nunley
Chief United States District Judge